■ In the Matter of Joseph Schreiner et al., Petitioners, v. James E. Allen, as Commissioner of Education of the State of New York, Respondent.— Appeal from an order of the Supreme Court at Special Term which dismissed on the merits a petition in a proceeding under article 78 of the Civil Practice Act to annul a determination of the State Commissioner of Education sustaining an election held to vote upon a proposal to organize a central school district. (Education Law, §§ 310, 2037, 1803-a, subds. 2–5.) Upon a recount and recanvass had at the instance of persons other than the petitioners here, the Commissioner found that the proposition was carried by a vote of 2,726 to 2,684, with 92 blank and void votes. That determination was not reviewed and the proceeding now before us is directed only to the conduct of the election. Petitioners' first contention is of noncompliance with the requirement that each voter "sign a statement contained in a pollbook provided for the purpose, declaring that he is a qualified voter within the central school district". (Education Law, § 1803-a, subd. 2, par. e.) They assert that 24 voters signed on a page of the pollbook on which the statement did not appear, others upon a page where part of the rubber-stamped statement is said to have been "illegible" and others on pages where it is described as "faint". It is too obvious to require argument that the statute contemplates that the statement will appear in such form as to be visible and comprehensible; and hence we are quite unable to agree with the conclusion stated in the Commissioner's determination that the statute would be satisfied if the declaration appeared but once in the book, which, it is safe to assume, will usually remain open only at a page where space for signatures remains. Upon inspection, however, it appears that the voters signed on but one side of the page — that upon which the stamped legend appeared at the top — except that in one instance signatures also appeared on the reverse side of the page, but there the declaration at the top of the opposite page was apparent and visible. Examining the allegedly faulty reproductions of the statement, we find none to be illegible. Consequently, and as respects all of the objections based on paragraph e, above cited, we conclude that the Commissioner was, upon the evidence, entitled to find "substantial compliance with the procedures herein required". (Education Law, § 1803-a, subd. 5.) Petitioners attack, also, instances of noncompliance with instructions issued by the Commissioner that voters register upon the pollbook their "full" names and addresses. Some 26 voters gave no address and others set forth apparently incomplete addresses by omitting street addresses while specifying towns and

villages, or vice versa, while others made use of ditto marks. We do not adopt the Commissioner's holding that the noncompliance with his own instructions was of no moment since the statute does not require "that the voters sign their address"; nor are we obliged, under the circumstances, to determine whether the instructions are of effect comparable to promulgated regulations. We know of no statutory provision or judicial decision tending to support the Commissioner's contention that failure to challenge any unqualified voter in some way rendered the conduct of the election invulnerable to attack. We do find persuasive the fact that there is not the slightest suggestion in the record that any of the 26 or, indeed, any of the others, were not qualified voters, or not so readily identifiable as to permit petitioners' investigation of their status. The failure of strict enforcement of the instructions may have afforded opportunity to unqualified persons to register and vote but there is no indication that any did. "Of course, a showing of the existence of opportunities to cast illegal or improper votes is not enough to invalidate an election; there must be a showing that illegal votes were actually cast. Otherwise, the presumption of regularity stands unrebutted." (*Matter of O'Brien* v. *Commissioner of Educ.*, 3 A D 2d 321, 323, appeal dismissed 4 N Y 2d 140, motion for leave to appeal denied 5 N Y 2d 707, cert. denied 361 U. S. 117.) As their final contention, petitioners group certain objections predicated upon statements alleged to have been made by "the proponents of centralization" and "those in charge of the election". One was that any husband and wife, if one was not otherwise qualified, were each entitled to vote if they alternated in paying rent; and another statement alleged was that each holder of a "joint lease" might vote. Assuming that this supposed advice was erroneous in each respect, nevertheless as in *O'Brien* (*supra*), there is no indication that it gave rise to more than a possible opportunity to vote illegally. Petitioners present hearsay evidence that votes were cast by 30 persons residing in trailers, each of whom paid a "fixed monthly fee" for parking his trailer within a trailer camp and "for the privilege of using certain of the facilities located within the trailer camps." No reason appears for not treating a person paying a monthly sum for the occupancy of real estate and appurtenant facilities as one who "leases  *  *  *  real property". (Education Law, § 2012, subd. 3, par. a; cf. Real Property Tax Law, § 102, subd. 12, par. g; *New York Mobile Homes Assn.* v. *Steckel*, 9 N Y 2d 533.) The papers before us fail to demonstrate action by the Commissioner that might fairly be termed purely arbitrary. (*Matter of Board of Educ. of City of N. Y.* v. *Allen*, 6 N Y 2d 127, 137.) Order affirmed, without costs. Gibson, J. P., Herlihy, Reynolds and Taylor, JJ., concur.